UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD SMITH,

    Plaintiff,

    v.

MEGAN J. BRENNAN, et al.,

    Defendants.

Case No. 15-cv-04516-WHO

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 15

## INTRODUCTION

Plaintiff Ronald Smith, proceeding pro se, brings his third lawsuit in this district against his former employer, the United States Postal Service ("USPS"). Judge Wilken granted summary judgment against Smith in the first lawsuit in 2004, and the Ninth Circuit affirmed in 2006. I granted summary judgment against Smith in the second lawsuit in 2014. At the moment, the allegations in this action, brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Rehabilitation Act of 1973 ("Rehabilitation Act"), are so unclear that they fail to provide fair notice to the defendant, Postmaster General Megan J. Brennan, of Smith's claims. From what I can tell, most if not all of his claims are barred by res judicata in light of the prior lawsuits, and all of them are untimely because of administrative requirements with which he failed to comply. Accordingly, I GRANT defendant's motion to dismiss.[1] In light of Smith's pro se status, I will give him leave to amend.

## BACKGROUND

**I.   CURRENT COMPLAINT**

Smith filed this action on September 30, 2015. Dkt. No. 1 ("Compl."). According to his

---

[1] Defendant moves in the alternative for summary judgment. Because I am treating this as a motion to dismiss, the motion for summary judgment is DENIED as moot.

complaint, he began working for the USPS in December 1988. Compl. ¶ 6. He was designated as a probationary employee for his first ninety days of employment. *Id.* During this period, he was asked to complete additional application forms. *Id.* In completing these forms, he answered, "No," to a question asking whether he had ever been convicted of a crime. *Id.* Smith states that he had suffered a felony conviction in California state court, but that the conviction had been expunged, thereby "entitl[ing] him under California law to reply in the negative to [an] inquiry regarding a [criminal] conviction." *Id.* ¶¶ 7-8. He alleges that the USPS nevertheless required him to produce a copy of his criminal record as a condition of employment. *Id.* ¶ 9. He also alleges that from 1988 to 1992, the USPS "refused to grant [him] promotions [to] which he was entitled by reason of his work performance." *Id.* ¶ 10. The USPS "repeatedly cited [his] 'criminal record' as justification" for refusing to grant the promotions. *Id.* In addition, "[u]nder threat from [the USPS], [he] signed a form stating that he had 'falsified' his employment application by his answer to the criminal conviction question." *Id.* At the hearing, Smith argued that this was the genesis of the problems about which he now seeks redress.

The rest of Smith's complaint is a chronological laundry list of alleged wrongs by the USPS spanning from 1992 to 2012, none of which appear in any way connected with his criminal record. He alleges that:

• At some point "[a]fter 1992," he successfully completed a course to qualify as a Postal Supervisor but was not given a Postal Supervisor assignment. *Id.* ¶ 11.

• In 1996, he injured both his shoulders while working, but the USPS refused to acknowledge his injury. *Id.* ¶ 12. He returned to work after one month. *Id.*

• In 2001, he reinjured his shoulders during the course of his employment, and the USPS again "refused to recognize [his] injury and to accommodate [him] in his employment duties." *Id.* ¶ 13. He "underwent a period of rehabilitation . . . through the auspices of the Veteran's Administration" and then returned to work. *Id.*

• In 2004, he "requested accommodations from [the USPS] to enable him to work with the aid of a computer designed to alleviate his hearing and learning disabilities." *Id.* ¶ 14. The USPS denied the request. *Id.*

    • In 2004, the USPS "deemed [him] to be on leave-without-pay status." *Id.* ¶ 15.

    • In approximately 2010, the USPS "notified [him] that it was removing him from employment for the stated reason that he had been on leave-without-pay status for more than one year." *Id.*

    • In 2012, the USPS "terminated [his] employment . . . without just cause and without responding in any way to [his] requests for reasonable accommodations to his injuries and disabilities." *Id.* ¶ 17.

Smith identifies no particular claims or causes of action but requests several forms of relief, including reinstatement to a position with the USPS and compensatory damages, including "back pay for the period since [his] unlawful discharge until the reinstatement." *Id.* ¶ 18. He asserts jurisdiction under Title VII and the Rehabilitation Act. *Id.* ¶ 1. He pleads no facts regarding administrative exhaustion but submits, as an exhibit to his complaint, a decision from the Equal Employment Opportunity Commission ("EEOC") denying his request for reconsideration and notifying him that he has 90 days to file a civil action. Dkt. No. 6. The EEO decision is dated June 25, 2015. *Id.*

## II.  PRIOR LAWSUITS

Defendant identifies two other lawsuits Smith has filed against the Postmaster General in this district. In *Smith v. Potter*, No. 01-cv-03270-CW (N.D. Cal. filed Aug. 27, 2001) ("*Smith I*"), Smith alleged that between 1990 and 1994, the USPS failed to reasonably accommodate his learning disability by refusing to give him a requested hand-held computer to help him with his work, and that in 1995 the USPS discriminated against him on the basis of his race, age, and learning disability by failing to appoint him to a supervisory position. Tseng Decl. Exs. A and B (Dkt. Nos. 19-1 and 19-2). Judge Wilken granted summary judgment for John Potter, the Postmaster General at the time, and the Ninth Circuit affirmed on appeal. Tseng Decl. Exs. A and B; *Smith v. Potter*, 186 F. Appx. 733 (9th Cir. 2006). The Supreme Court denied Smith's petition for writ of certiorari. *Smith v. Potter*, 549 U.S. 1007 (2006).

Smith filed *Smith v. Brennan*, No. 12-cv-01358-WHO (N.D. Cal. filed Mar. 19, 2012) ("*Smith II*"), after appealing his 2010 removal to the Merit Systems Protection Board ("MSPB").

*Id.* at Dkt. No. 70 at 4.  He accused the USPS of failing to reasonably accommodate a series of injuries he sustained in 1988, 1999, 2000, and 2004.  *Id.* at Dkt. No. 70 at 5.  On March 6, 2014, I issued an order granting summary judgment against Smith on the ground that his claims were time-barred under the applicable statute of limitations.  *Id.*

### III.    INSTANT MOTION

Defendant filed this motion for summary judgment, or in the alternative, motion to dismiss on February 5, 2016.  Dkt. No. 15 ("Mot.").  The motion is based on a number of defects in Smith's claims, including that they are inadequately alleged, untimely, and barred by res judicata.  *Id.*  Smith's opposition brief does not address either the arguments in defendant's motion or the merits of his claims.  *See* Dkt. No. 22.  It is largely dedicated to pointing out a series of purported flaws in the administrative documents submitted with defendant's motion.  *Id.*  I heard argument from the parties on April 6, 2016.  Dkt. No. 26.

### LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted).

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  While a complaint "need not contain detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state a claim to relief that is plausible on its face."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

4

In considering whether a claim satisfies this standard, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marines Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). A court may "reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

## DISCUSSION

### I. SMITH'S ALLEGATIONS DO NOT PROVIDE FAIR NOTICE OF HIS CLAIMS

As an initial matter, Smith's allegations are simply too disorganized and lacking in detail to state a claim under either Title VII or the Rehabilitation Act.

Title VII prohibits employment discrimination on the basis of a protected trait. A discriminatory employment practice is established by showing that "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). "A plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination by offering evidence that gives rise to an inference of unlawful discrimination." *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (internal quotation marks and alterations omitted). A plaintiff may do this by satisfying the four-part framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802 (1973),[2] or by simply presenting direct or circumstantial evidence indicating that the employment decision was based on a protected trait. *Boeing*, 577 F.3d at 1049; *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). "[A] Title VII plaintiff need not plead a prima facie case to survive a motion to dismiss," but he must "plead facts sufficient to show that his claim has substantive plausibility." *Haney v. United Airlines, Inc.*, No. 15-cv-00474-VC, 2016 WL 80554, at *1 (N.D. Cal. Jan. 7, 2016) (internal quotation marks and alterations omitted).

The Rehabilitation Act provides a cause of action for both disability discrimination and failure to accommodate. To state a claim for disability discrimination under the Rehabilitation Act, a plaintiff must plead facts plausibly demonstrating that he or she (1) is a person with a disability, (2) is otherwise qualified for employment, and (3) suffered discrimination because of his or her disability. *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007). "The Americans with Disabilities Act, whose standards of substantive liability are incorporated in the Rehabilitation Act, defines 'disability' as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment." *Id*. To state a claim for failure to accommodate under the Rehabilitation Act, a plaintiff must plausibly establish, among other things, "the existence of a reasonable accommodation that would enable him or her to perform the

---

[2] In *McDonnell*, the Supreme Court explained that

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications
>
> [ . . . ]
>
> The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.

411 U.S. at 802, 802 n.13.

essential functions of [the] job." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1046-47 (9th Cir. 1999) (internal quotation marks omitted).

Smith's allegations do not satisfy these requirements. With respect to Title VII, Smith does not identify the protected trait or traits that formed the basis for the alleged discrimination. Nor does he identify the employment decision or decisions that were allegedly discriminatory – he alleges a number of employment decisions by the USPS but does not indicate which, if any, provide the basis for his Title VII claims. With respect to the Rehabilitation Act, it is unclear whether Smith's claims are based on his shoulder injuries, his hearing and learning disabilities, or some other impairments (for example, the eye, neck, and foot injuries raised in *Smith II*). Further, he alleges no facts regarding whether his impairments "substantially limited one or more of [his] major life activities." *Walton*, 492 F.3d at 1005. Nor does he allege facts plausibly establishing either that any employment decision was motivated by one or more of his impairments, or that there was a reasonable accommodation that the USPS failed to provide. He states that in 2012 the USPS "terminated [his] employment . . . without just cause and without responding in any way to [his] requests for reasonable accommodations to his injuries and disabilities." *Id.* ¶ 17. But he does not explain which requests for reasonable accommodations or which injuries and disabilities he is referring to, or how the termination in 2012 is connected to his impairments.

For these reasons, Smith's allegations are not sufficient to provide "fair notice of what [his] claim[s] [are] and the grounds upon which [they] rest[]." *Twombly*, 550 U.S. at 555. This is one reason Smith's complaint must be dismissed. In amending his complaint, Smith should pay attention not only to the defects I describe above, so that he states claims that are plausible, but also to the problems I discuss below, which would require me to dismiss some or all of his claims with prejudice in light of the facts as I currently understand them.

## II.   SMITH'S CLAIMS ARE UNTIMELY

Defendant contends that Smith's claims are untimely because (1) he did not file suit within 90 days of receiving a right-to-sue notice from the EEOC; and (2) he did not contact an EEO counselor within 90 days of the alleged misconduct. Defendant is right.

**A.    90 days to file suit**

Smith filed an informal complaint with the EEOC in March 2014, followed by a formal complaint in June 2014. Lui Decl. Exs. A, B (Dkt. Nos. 17-1, 17-2).[3] After the USPS dismissed the formal complaint on July 24, 2014, Smith appealed to the EEOC. Lui Decl. Exs. C, E (Dkt. Nos. 17-3, 17-5). On February 19, 2016, the EEOC issued a decision affirming the dismissal. Lui Decl. Ex. F (Dkt. No. 17-6). On June 25, 2015, it issued a decision, along with a right-to-sue notice, denying Smith's request for reconsideration. Lui Decl. Ex. H (Dkt. No. 17-8).

Under both Title VII and the Rehabilitation Act, Smith was required to file suit within 90 days of receiving notice of the final agency action on his complaint. *See Bullock v. Berrien*, 688 F.3d 613, 616 (9th Cir. 2012); *see also* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407. This 90-day period "operates as a limitations period," meaning that if a claimant does not file a civil action within the 90 days, "then the action is time-barred." *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1121 (9th Cir. 2007).

The limitations period begins on the date the right-to-sue notice "arrive[s] at the claimant's address of record." *Payan*, 495 F.3d at 1122. Where this date is unknown, the notice is presumed to have arrived three days after the date it was mailed, which is presumed to be the date the notice was issued. *Id.* at 1123-26. Both of these presumptions are rebuttable. *Id.*

The EEOC issued its decision denying Smith's request for reconsideration on June 25, 2015. Lui Decl. Ex. H. The attached certificate of mailing indicates that the decision and right-to-sue notice were mailed on that date. *Id.* Three days from June 25, 2015 is Sunday, June 28, 2015. If the notice is presumed to have arrived on Monday, June 29, 2015, then Smith had until September 28, 2015 to file his complaint.[4] He did not file it until September 30, 2015.

While the presumptive dates of mailing and arrival can be rebutted, Smith offers no

---

[3] "It is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record." *Lacayo v. Donahoe*, No. 14-cv-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015) (citing cases). To the extent that Smith's opposition brief can be construed as raising objections to the administrative documents cited in this Order, the objections are OVERRULED.

[4] Ninety days from June 29, 2015 is September 27, 2015, but September 27, 2015 was a Sunday.

8

evidence or argument to rebut them here. Nor does he identify any basis for equitable tolling. *Cf. Gray v. Shinseki*, No. 12-cv-03109-JCS, 2013 WL 1891387, at \*2-3 (N.D. Cal. May 6, 2013) (noting that the 90-day period is subject to equitable tolling but dismissing the plaintiff's Title VII complaint with prejudice where it was filed two days after the 90-day deadline and the plaintiff "does not allege in the complaint or suggest in her opposition brief that there are grounds for finding equitable tolling"). Because he did not file suit within 90 days of receiving his right-to-sue notice, his claims are time-barred and must be dismissed. *See id.*; *see also Payan*, 495 F.3d at 1127 (finding Title VII complaint time-barred where it was filed three days after the 90-day deadline); *Scholar v. Pac. Bell*, 963 F.2d 264, 267-68 (9th Cir. 1992) (same); *Hemenway v. Shinseki*, No. 11-cv-00505-DMR, 2012 WL 2792440, at \*10 (N.D. Cal. July 9, 2012) (same).

### B. 45 days to contact an EEO counselor

In addition to filing suit within 90 days of receiving the right-to-sue notice, Smith was required to "initiate contact" with an EEO counselor within 45 days of the alleged misconduct. *See* 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."); *see also Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003). While section 1614.105(a)(1) "is not a jurisdictional prerequisite for suit in federal court, [the Ninth Circuit] ha[s] consistently held that, absent waiver, estoppel, or equitable tolling, failure to comply with this regulation is fatal to a federal employee's discrimination claim in federal court." *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (internal quotation marks and alterations omitted). The burden is on the plaintiff to establish that waiver, estoppel, or equitable tolling applies. *See id.* at 1043-44.

The alleged misconduct in the complaint spans from 1988 to 2012. According to the documents submitted by defendant, Smith first contacted an EEO counselor on March 13, 2014, more than two years after his termination. Lui Decl. ¶ 3, Ex. A (Dkt. No. 17-1). Smith does not substantively address this issue in his opposition brief, and I see no basis in his complaint or opposition brief for the conclusion that he initiated contact with an appropriate individual any

9

earlier than March 13, 2014, or for the application of waiver, estoppel, or equitable tolling. This is an additional reason his claims are time-barred. *See Branch v. McDonald*, No. 14-cv-03846-DMR, 2015 WL 7874763, at *3, *9 (N.D. Cal. Dec. 4, 2015) (granting summary judgment against plaintiff on her Title VII and Rehabilitation Act claims for failure to comply with section 1614.105(a)(1)); *Lacayo*, 2015 WL 3866070, at *3-5 (dismissing Title VII and Rehabilitation Act claims under Rule 12(b)(6) for same reason); *Gullette v. Donahoe*, No. 12-cv-00490-CW, 2013 WL 1283391, at *5-6 (N.D. Cal. Mar. 27, 2013) (dismissing Rehabilitation Act claims under Rule 12(b)(6) for same reason); *see also Regacho v. Potter*, 247 F. Appx. 908, 909 (9th Cir. 2007) ("[Plaintiff] first complained to the EEO counselor on August 17, 1999 regarding USPS's failure to train him and to accommodate him. Thus, [plaintiff] lost the ability to complain about discrimination that occurred prior to July 4, 1999.").

## III. NEARLY ALL OF SMITH'S CLAIMS ARE BARRED BY RES JUDICATA

Defendant contends that all of Smith's claims in this action, except those concerning his termination in 2012, are barred by res judicata as a result of the judgments in *Smith I* and *Smith II*. Mot. at 7-8. I agree.

Res judicata, or claim preclusion, "provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *TahoeSierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal quotation marks omitted). "Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Id.* (internal quotation marks omitted). The doctrine extends to "any claims that were raised *or could have been raised* in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (emphasis in original). "A plaintiff need not bring every possible claim. But where claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012).

Here, there is an identity of claims with respect to all of Smith's current claims except, perhaps, those concerning his termination in 2012. The Ninth Circuit looks to four factors in

determining whether claims in successive lawsuits are identical for res judicata purposes:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Turtle Island*, 673 F.3d at 917-18 (internal quotation marks omitted). The fourth factor is by far the most important, to the point that the Ninth Circuit has repeatedly described it as "outcome determinative." *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010); *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988 (9th Cir. 2005).

*Smith I* and *Smith II* in combination brought claims concerning the USPS's alleged (1) failure to reasonably accommodate Smith's learning disability between 1990 and 1994; (2) failure to promote Smith to a supervisory position in 1995; and (3) failure to reasonably accommodate Smith's injuries in 1988, 1996, 2000, and 2004. The complained-of injuries in *Smith II* were an eye infection (1988), shoulder injuries (1996 and 2000), and neck, shoulder, and foot injuries (2004). *See Smith II*, No. 12-cv-01358, Dkt. No. 70 at 2-4.

As discussed above, Smith's current claims are too disorganized and lacking in detail to survive a Rule 12(b)(6) motion. But he appears to seek to assert claims based on his termination in 2012, plus the USPS's (1) failure to promote him between 1988 and "[a]fter 1992," Compl. ¶¶ 10-11; (2) failure to accommodate his shoulder injuries in 1996 and 2001, *id.* ¶¶ 12-13; and (3) failure to accommodate his hearing and learning disabilities in 2004, *id.* ¶ 14.[5]

Apart from the termination in 2012, each of these claims clearly arises out of the same transactional nucleus of facts as *Smith I* and/or *Smith II*. They all concern the same basic theories of liability as the claims in those cases (failure to promote and/or to reasonably accommodate

---

[5] Smith does not appear to bring claims based on his being placed on leave-without-pay status in 2004, or his being removed from employment in 2010. Neither event is identified as an issue in his informal EEO complaint, formal EEO complaint, or the June 27, 2014 dismissal of the formal complaint. *See* Lui Decl. Exs. A, B, C; *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) ("Subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") (internal quotation marks and alterations omitted).

11

injury or disability), and they all concern the same time period (1988 to 2004).  At least some of Smith's current claims, such as those based on the USPS's alleged failure to accommodate his shoulder injuries in 1996 and 2001, appear to be the exact same as those that were previously litigated.  While other of his current claims appear to be slightly different from those raised in *Smith I* and *Smith II*, there is no question that they arise from the same factual circumstances and could have been raised in those cases.  This includes Smith's concerns regarding how the USPS treated him as a result of his expunged conviction; those concerns should have been raised in the prior cases.  Smith makes no argument to the contrary in his opposition brief.  The identity of claims element is satisfied.

The final judgment on the merits and privity between parties elements are also satisfied.  *Smith I* and *Smith II* both ended in a judgment on the merits.  *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (dismissal on statute of limitations grounds is a judgment on the merits).  And, because Smith brought each of his actions against the Postmaster General, there is privity between the parties.  *See Gullette*, 2013 WL 1283391, at *4 (finding privity element satisfied where the plaintiff "brought both of her prior actions against the Postmaster General").

With the exception of his claims based on his termination in 2012, all of Smith's claims are barred by res judicata.[6]  It appears that any claims based on the termination may also be precluded by the prior lawsuits, but I cannot be sure until Smith files a more coherent complaint.

## CONCLUSION

All of Smith's claims are inadequately alleged and untimely, and nearly all of them are

---

[6] Instead of attacking Smith's claims based on his termination on res judicata grounds, defendant contends that these claims must be dismissed (in addition to the reasons discussed above) because Smith initially appealed his termination to the MSPB.  *See* Mot. at 6-7.  Smith filed an MSPB appeal on March 9, 2012, asserting that his termination was wrongful "because the agency never presented my medical documentation to [the] OPM."  Mihal Decl. Ex. B (Dkt. No. 18-2).  The MSPB issued an initial decision on July 6, 2012 affirming the termination.  Lui Decl. Ex. D (Dkt. No. 17-4).  Smith did not file a petition for review, and there is no indication that he took any further action in the MSPB appeal.  *See* Mihal Decl. Ex. A (Dkt. No. 18-1).  Defendant contends that this sequence of events precludes Smith from bringing claims in this Court based on his termination.  Because Smith's claims arising from his termination fail for the reasons stated elsewhere in this Order, I do not address this argument at this time.

also barred by res judicata. Accordingly, defendant's motion to dismiss is GRANTED. In light of Smith's pro se status, Smith may have an opportunity to amend his complaint to address the deficiencies discussed in this Order. His first amended complaint, if any, is due within 45 days of today's date. Defendant's motion for summary judgment is DENIED AS MOOT.

Smith may wish to seek assistance from the Legal Help Center by calling 415-782-8982 or by signing the appointment book outside the Legal Help Center's office on the 15th floor of the federal building at 450 Golden Gate Avenue, San Francisco, California. More information about the Legal Help Center is available online at cand.uscourts.gov/helpcentersf. Smith may also wish to obtain a copy of this district's handbook for parties representing themselves in federal court, available at cand.uscourts.gov/prosehandbook.

Smith is advised to carefully review this Order and to file a first amended complaint that addresses my concerns. If he is unable to state a plausible claim in his first amended complaint, I may dismiss this case with prejudice because of the apparent res judicata effect of the prior lawsuits and timeliness issues discussed above.

**IT IS SO ORDERED**.

Dated: April 13, 2016



WILLIAM H. ORRICK
United States District Judge